# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| MARC E. JOHNSON, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Criminal Action No.: 1:10-cr-446 |
| ) | Civil Action No.: 1:14-cv-431 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on pro se Petitioner Marc E. Johnson's Motion to Vacate under 28 U.S.C. § 2255. Dkt. No. 336. The government has filed its response in opposition, to which Petitioner replied. Dkt. Nos. 385, 391. For the reasons stated below, the motion will be denied.

I.  **Background**

From June to October 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted an undercover investigation involving Petitioner and other co-conspirators. In June 2010, an ATF confidential informant introduced three undercover law enforcement officers ("UCs") to Defendant Phun, who was based in Philadelphia. During the meeting, they discussed Phun's large-scale marijuana trafficking as well as a potential armed robbery of a narcotics "stash house" in Virginia. Following this initial meeting, Phun met with the UCs from June 2010 to October 2010, exchanging contraband cigarettes for marijuana.

On October 6, 2010, Phun met with the UCs in Fairfax County, Virginia to discuss the logistics of the stash house robbery. The UCs provided Phun with pictures of motels, explaining that these were the locations where one UC had previously picked up kilograms of cocaine. The

UC explained that when he arrived to collect the drugs, he observed ten kilograms of cocaine and was met by three or four armed individuals. Phun then explained that he had access to ballistic vests as well as FBI raid jackets and hats, and that he and his associates could pose as law enforcement during the robbery. The UCs informed Phun that the cocaine would arrive at the stash house in three weeks.

On October 21, 2010, the UCs met with Phun, Petitioner, and a third unnamed individual at a Famous Dave's restaurant in Philadelphia to discuss the upcoming robbery. The UCs explained the seriousness of the robbery and questioned the Defendants' desire to conduct it. Defendants agreed that they wished to go through with it. Petitioner confirmed that the crew would bring their own firearms for the task. At the end of the meeting, the UCs stated that the cocaine would arrive in Virginia the following Thursday. Petitioner and Phun agreed that they would travel to Virginia on Wednesday and conduct the robbery on Thursday.

On October 28, 2010, the remaining defendants arrived in Virginia to conduct the robbery. Defendant Un contacted the UCs and arranged to meet at a gas station in Fairfax County, Virginia. Around 11am, the UC arrived at the gas station where the defendants were parked in a white Suburban. Un and Petitioner approached the UC where they shook hands. The UC then advised the defendants to follow him to a storage facility where the rental car to be used for the robbery was located.

After following the UCs to a storage facility, Defendants Un, Min, and Petitioner indicated that they were ready to do the job, and stated that the firearms were in the white Suburban. After more discussion, the UC suggested that they transfer the firearms from the Suburban to the rental. Un then walked to the Suburban and engaged in conversation with Defendants McCalister and Stevens. Ten minutes later, McCalister and Stevens exited the car

and walked towards the storage unit, concealing firearms under their clothes and in their pockets. They then placed the guns in a compartment inside the rental car. Stevens and McCalister then joined the rest of the group in the storage unit. The UC asked the defendants whether they were ready, and they confirmed they were. At this time, the UC pretended to receive a call and advised the group that it was time to start the robbery. Law enforcement then moved in and arrested Petitioner and the other defendants.

On December 28, 2010, a federal Grand Jury charged Petitioner in a three-count indictment with conspiring to affect commerce by robbery, possession of a firearm in furtherance of a crime of violence, and conspiring to possess with intent to distribute five kilograms or more of cocaine. Dkt. No. 22. A Grand Jury later charged him in a three-count superseding indictment for the same offenses. Dkt. No. 35.

During trial, the government filed a motion in limine to preclude all Defendants except Phun from using the affirmative defense of entrapment. Dkt. No. 60. The Court denied this motion without prejudice. Dkt. No. 107. All Defendants subsequently filed notices of an entrapment defense, to which the government responded with a notice of intent to introduce evidence of uncharged conduct if Defendants used the defense. Dkt. No. 110. In its March 10, 2011 Order, the Court stated that it would allow Defendants to raise the entrapment defense but would permit the government to introduce admissible evidence of prior criminal history if they decided to do so. Dkt. No. 143. As a result, Defendants did not raise the defense.

The jury trial commenced on March 14, 2011. On March 18, 2011, the jury convicted Petitioner of all three counts of the superseding indictment. Dkt. No. 160. On July 1, 2011, the Court entered judgment against Petitioner and sentenced him to 240 months of incarceration as to Count 1 and Count 3, to run concurrently, and a consecutive sentence of 60 months as to

Count 2. Dkt. No. 236. On July 8, 2011, Petitioner filed his notice of appeal to the Fourth Circuit, which ultimately affirmed his conviction. Dkt. Nos. 245, 319.

## II. Discussion

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation marks omitted). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel based upon ten separate grounds, alleging defense counsel's failure to: (1) challenge the composition of the jury based on exclusions of African-Americans and Asian-Americans; (2) contest the drafting of the indictment as to the specific language of the aiding and abetting statute, which denied him notice of the charges against him; (3) contest the existence of the alleged conspiracy; (4) contest the sufficiency of the nexus to interstate commerce; (5) contest jury instructions related to the Hobbs Act; (6) object that a conspiracy cannot be formed between a criminally motivated person and a government agent; (7) challenge the existence of a single conspiracy as opposed to multiple conspiracies; (8) raise an entrapment defense and request an entrapment jury instruction; (9) contest Petitioner's § 851 enhancement; and (10) seek dismissal of the indictment pursuant to the "outrageous government conduct" doctrine.

In the landmark *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong requires a showing that counsel failed to provide reasonably effective assistance—in other words, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *See United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The second prong requires the defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Importantly, a court need not review the reasonableness of counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697). Under this standard, the Court will address each of Petitioner's arguments.

i.  *Counsel's Alleged Failure to Contest the Composition of the Jury*

With respect to the first claimed ground of ineffective assistance of counsel, the law is clear: a criminal defendant has a constitutional right to a jury that represents a fair cross-section of the community. *Compare Duren v. Missouri*, 439 U.S. 357, 360 (1979) (holding state statute that granted women an automatic exemption from jury service upon request violated defendant's Sixth and Fourteenth Amendment rights), *with Berghuis v. Smith*, 559 U.S. 314, 331 (2010) (holding defendant's fair cross-section rights were not violated even where he produced some evidence that assignment order led to the underrepresentation of African-Americans in venires).

Unlike the defendants in *Duren* and *Berghuis*, however, Petitioner has not pointed to any facts or challenged any law that resulted in the alleged systematic exclusion of African-

5

Americans or Asian-Americans from the jury. Petitioner's trial counsel, Douglas Steinberg, asserts in his affidavit that he reviewed the background of potential jurors and consulted with Johnson on jury selection. Steinberg Aff. 2. The Court's sidebar discussion with counsel over juror strikes following the *voir-dire* likewise showed no evidence of systematic exclusions of jurors based upon race. Trial Tr. 62–70. Moreover, in its *voir-dire*, the Court included proposed questions submitted by defense counsel. *See* Dkt. No. 144. Therefore, because "[c]ounsel is not ineffective for failing to raise an objection or make a motion for which there is 'no obvious basis,'" Petitioner's counsel was not ineffective for failing to object to the composition of the jury under the facts presented here. *See Merica v. United States*, No. 7:07-cv-350, 2007 WL 4561298, at *3 (W.D. Va. Dec. 21, 2007) (quoting *Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987)). Accordingly, the Court will deny Petitioner's first ground for ineffective assistance of counsel.

### ii. *Counsel's Alleged Failure to Contest the Drafting of the Indictment*

Petitioner also claims that his counsel was ineffective for failing to "notice the drafting of the indictment as to the specific statutory language of the Aiding & Abetting Statute, 18 U.S.C. 2." Pet'r's Mot. Vacate 6. The Court, however, disposed of this issue in its order denying Defendant Phun's motion to dismiss the superseding indictment. Dkt. Nos. 64, 107. Indeed, the Court explicitly stated that "each count properly recites the elements of the offense charged therein against each Defendant." Dkt. No. 107.

For purposes of this motion, however, the Court has revisited the issue and again concludes that the superseding indictment properly notified Petitioner of the charges against him. *See Blake v. Morford*, 563 F.2d 248, 251 (6th Cir. 1977) (holding that a constitutional violation occurs only when the accused is "not given proper notice in the indictment" of the charged

6

offense). Because the indictment was not defective, counsel was not ineffective for failing to object on that basis. Petitioner has therefore failed to satisfy the first prong of the *Strickland* test, and his second ground for ineffective assistance of counsel will be denied.

*iii.   Counsel's Alleged Failure to Contest the Existence of the Conspiracy*

With respect to Petitioner's third claimed ground, the record clearly establishes that defense counsel repeatedly objected to the existence of a conspiracy, even prior to the introduction of any evidence on the issue. Trial Tr. 126, 133, 218. Counsel also submitted a proposed jury instruction on multiple conspiracies entitled "R-Conspiracy: Single or Multiple Conspiracies." Steinberg Aff. 2. Because Petitioner's allegation that counsel failed to contest the existence of a conspiracy is factually incorrect, as demonstrated by the record, the Court will deny his third ground for ineffective assistance of counsel.

*iv.   Counsel's Alleged Failure to Contest the Sufficiency of the Nexus to Interstate Commerce*

With respect to the fourth claimed ground of ineffective assistance of counsel, the record shows that, contrary to Petitioner's allegation, defense counsel did indeed challenge the sufficiency of the nexus to interstate commerce as to count one, which alleged a violation of the Hobbs Act. During trial, defense counsel objected to the admission of testimony regarding whether or not cocaine travels in interstate commerce. Trial Tr. 411. In Petitioner's motion for acquittal, counsel argued that the government had failed to prove a nexus to interstate commerce. *Id.* at 559. He repeated this argument in his objections to the proposed jury instructions. *Id.* at 581–82.

Even if defense counsel had not actually challenged the nexus to interstate commerce, the nexus was sufficiently established by the government according to Fourth Circuit precedent. Under its "broad construction" of the Hobbs Act, the Fourth Circuit has held that a defendant's

reliance on out-of-state materials satisfies the required nexus to interstate commerce. *See United States v. Santoni*, 585 F.2d 667, 670–73 (4th Cir. 1978) (holding corporation's "use of material which necessarily traveled in interstate commerce" to be sufficient nexus to provide jurisdiction for conviction under Hobbs Act). The Fourth Circuit has also held that the mere robbery of a drug dealer satisfies the nexus to interstate commerce element of the Hobbs Act. *United States v. Williams*, 342 F.3d 350, 354–55 (4th Cir. 2003).

Here, Petitioner travelled with the other co-defendants across state lines from Philadelphia, Pennsylvania to Fairfax County, Virginia to commit the robbery at the center of the conspiracy. Trial Tr. 389. Under the "broad construction" of the Hobbs Act adopted by the Fourth Circuit, this movement of conspirators across state lines in furtherance of the conspiracy is sufficient to satisfy the nexus to interstate commerce. The plan to move the drugs recovered from the robbery from Virginia out of state is similarly sufficient. Trial Tr. 192. Moreover, the planned robbery of a cocaine stash house was in and of itself sufficient, pursuant to *Williams*, to satisfy the nexus to interstate commerce. 342 F.3d at 354–55. For these reasons, Petitioner's fourth claim for ineffective assistance of counsel will be denied.

v. *Counsel's Alleged Failure to Contest a Jury Instruction Relating to the Hobbs Act*

Petitioner next contends that his counsel was ineffective for failing to object to a "defective jury instruction that incorrectly stated the law of 1951(a)." Pet'r's Mot. Vacate 10. It is difficult to discern which of the jury instructions Petitioner alleges should have been challenged. The only instruction that seems to fit the allegation is the government's Proposed Jury Instruction No. 27 entitled "Hobbs Act Armed Robbery – Essential Elements of the Offense Charged." Dkt. No. 115. That instruction, which was accepted by the Court and read to the jury, provided as follows:

> In order to sustain its burden of proof for the crime of conspiring to obstruct, delay, or affect interstate commerce by robbery as charged in Count 1 of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt
> One: That two or more persons agreed to commit a robbery encompassed within the Hobbs Act, 18 U.S.C. § 1951;
> Two: That the defendant knew of the conspiratorial goal; and
> Three: That the defendant voluntarily participated in helping to accomplish that goal.

*Id.*; Trial Tr. 724–25. Although it is true that defense counsel did not object to this instruction, there was "no obvious basis" to do so, as it accurately stated the law. *See Clanton*, 826 F.2d at 1359. Indeed, the instruction tracked the precise language cited approvingly by the Fourth Circuit: "to prove a Hobbs Act conspiracy, the government must show three things, namely that '(1) two or more persons agreed to commit a robbery encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal.'" *United States v. Carr*, 261 F. App'x 560, 563 (4th Cir. 2008) (quoting *United States v. To*, 144 F.3d 737, 747–48 (11th Cir. 1998)). Furthermore, defense counsel made multiple objections concerning the requisite nexus to interstate commerce to permit a conviction under the Hobbs Act. Trial Tr. 411, 559, 581–82. In light of the above, Petitioner's counsel did not provide ineffective assistance by failing to object to the Hobbs Act instruction.

Additionally, the case cited by Petitioner actually *supports* the Court's use of the instruction that, to convict Petitioner of the firearm possession charge, the government would have to prove beyond a reasonable doubt that he "committed the crime of conspiracy to commit robbery as charged in Count 1." *Compare* Trial Tr. 730–31 (jury instruction on Count 2), *with Luchenburg v. Smith*, 79 F.3d 388, 392 (4th Cir. 1996) ("A proper instruction would inform the jury to only consider the compound handgun offense *after* it convicted on a predicate crime of

9

violence."). Accordingly, based upon defense counsel's actual objection to a related instruction and objectively reasonable basis for not objecting to others, Petitioner has failed to show ineffective assistance of counsel and his fifth claimed ground will be denied.

> vi. *Counsel's Alleged Failure to Object that a Conspiracy Cannot Be Formed Between a Criminally Motivated Person and a Government Agent*

With respect to his sixth claimed ground, Petitioner accurately states the law but mischaracterizes the facts. It is indeed "well-established that one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator." *United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967). Yet it is also true that "a conspiracy may continue even though certain co-conspirators terminate their connection therewith, and may be replaced by other co-conspirators . . . ." *Id.* In this case, the conspiracy was not formed between Petitioner and the UCs. Rather, the conspiracy was formed when Petitioner engaged with the other co-defendants to commit the planned robbery of the stash house. *See* Trial Tr. 228–31, 238–41. Because neither Petitioner nor the co-defendants were government agents at the time they formed the conspiracy, there was no factual basis upon which defense counsel could object that a conspiracy could not have been formed with the UCs. As a result, Petitioner fails to show that his counsel rendered deficient performance and his sixth claimed ground of ineffective assistance of counsel will be denied.

> vii. *Counsel's Alleged Failure to Argue the Existence of Multiple Conspiracies as Opposed to a Single Conspiracy*

With respect to this claimed ground of ineffective assistance of counsel, the record demonstrates that defense counsel was not objectively unreasonable for failing to allege the existence of multiple conspiracies. The Fourth Circuit has stated that a "single conspiracy exists where there is 'one overall agreement'... or 'one general business venture.'" *United States v.*

*Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (citations omitted). In making such a determination, factors to consider include "the overlap of key actors, methods, and goals," as well as whether the operations were headquartered at the same location and whether the "methods and goals of the conspiracy remained the same throughout its activities." *Id.*

The above factors favor finding a single conspiracy in this case. The defendants shared the goal of robbing a cocaine stash house. The method of using a "crew" to rob the stash house using firearms remained the same throughout the conspiracy. The key actors also remained the same. *See* Trial Tr. 202–03, 226–36. Moreover, there was a single attempt to commit the robbery. *Cf. Leavis*, 853 F.2d at 218–19 (rejecting defendant's claim that there were multiple conspiracies despite the multiple attempts to import drugs). Under the facts of this case and Fourth Circuit precedent, defense counsel was not objectively unreasonable in failing to assert that there were multiple conspiracies.[1] Petitioner's seventh claimed ground thus fails the first prong of *Strickland* and will be denied.

viii.  *Counsel's Alleged Failure to Argue an Entrapment Defense*

With respect to Petitioner's eighth ground, defense counsel did in fact attempt to raise the entrapment defense. Dkt. No. 90 (Notice of Entrapment Defense filed by defense counsel). On March 10, 2011, the Court denied the government's motion in limine to preclude the defendants' use of the entrapment defense, but warned the defendants that if they chose to pursue it at trial, it would permit the government to introduce admissible evidence of prior criminal history to show the defendants' predisposition to commit the crime. Dkt. No. 143. Indeed, the government had already filed its notice of intent to introduce Petitioner's prior convictions on felony drug

---

[1] Instead, defense counsel made multiple objections to the existence of *any* conspiracy between the defendants throughout trial. For instance, counsel attempted to convince the Court at sidebar that the "government hasn't established at this point that there is a conspiracy involving our clients" prior to the introduction of any evidence on the issue. Trial Tr. 126, 133. Counsel for a co-defendant later made similar objections. *Id.* at 501–07.

11

offenses. Dkt. No. 110. Under these facts, it was clearly objectively reasonable for defense counsel to forego the defense in light of the risk posed by the government's proposed introduction of such unfavorable evidence.

Entrapment is an affirmative defense that is comprised of two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Matthews v United States*, 485 U.S. 58, 63 (1988). Importantly, inducement is not mere solicitation to commit a crime, but rather requires a showing of at least persuasion or mild coercion. *Sorrells v. United States*, 278 U.S. 435, 451 (1932); *United States v. Nations*, 764 F.2d 1073, 1080 (5th Cir. 1985). Predisposition entails a determination of whether the defendant "was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Matthews*, 485 U.S. at 63.

In this case, Petitioner exercised his right not to testify at trial. Trial Tr. 567. In doing so, however, he failed to provide the "'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence" needed to raise an entrapment defense. *Sorrells*, 278 U.S. at 451. Advising a criminal defendant not to testify is, of course, a routine and legitimate trial strategy, which should not be second-guessed. *See, e.g., United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002) (citing *e.g., Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001)). In light of the almost guaranteed introduction of his criminal history if he chose to pursue the entrapment defense, "a reasonable attorney ... could have decided that the potential risks of [the defendant] testifying outweighed the potential benefits." *Sayre*, 238 F.3d at 635. Because counsel's performance clearly did not fall below objective standards of reasonableness, Petitioner fails to satisfy the first prong of the *Strickland* test.

12

Even assuming, *arguendo*, that Petitioner was able to satisfy the first prong of the *Strickland* test, he still fails the second prong because he has not shown a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Even if defense counsel had been able to raise the entrapment defense, it is very unlikely that a jury would have found in Petitioner's favor given the strong evidence of his predisposition to commit the crime. When Petitioner met with the UCs, they questioned him regarding whether or not he wanted to execute the robbery due to the serious nature of the crime. He answered in the affirmative, adding that his crew would bring their own weapons for the robbery. Petitioner's two prior drug convictions also would have served as evidence of his predisposition to rob a cocaine stash house. Accordingly, because the result of the proceeding would likely have been the same even if the entrapment defense had been raised, Petitioner fails to show prejudice. Having failed both prongs of *Strickland*, Petitioner's eighth claimed ground of ineffective assistance of counsel will be denied.

    ix.   *Counsel's Alleged Failure to Challenge Petitioner's § 851 Enhancement*

With respect to his ninth claimed ground for ineffective assistance of counsel, defense counsel did in fact object to the Court's consideration of Petitioner's criminal history during sentencing. Under 21 U.S.C. § 851, if the United States attorney files a notice of intent to rely upon a defendant's previous criminal convictions during trial, the defendant is entitled to a written response regarding the use of this information. In this case, defense counsel did not file a written response to the § 851 notice. At sentencing, however, he noted Petitioner's "general objection to his criminal history ... and also specifically to the inclusion of the misdemeanor." Sentencing Hr'g Tr. 2. In his statement to the Court at the sentencing hearing, Petitioner himself

objected to the § 851 enhancement, but did not specifically deny the fact of his prior convictions. *Id.* at 7–8.

Petitioner claims that his counsel's performance was deficient because he "never told petitioner that he could file a written response to the information denying any allegation of the conviction, which then the [government] would've had the burden to prove beyond a reasonable doubt that the conviction was in fact a valid conviction and it was in fact Petitioner." Pet'r's Reply Br. 15. He also asserts that "the Court was supposed to ask if Petitioner affirmed or denied conviction." *Id.* Despite being incorrect as to the standard of proof, his argument has some merit. *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 569 (2010) (describing § 851's notice and process procedures as "mandatory prerequisites to obtaining a punishment based on the fact of a prior conviction"); *see also United States v. McDowell*, 745 F.3d 115, 123–24 (4th Cir. 2014) (explaining that the Supreme Court's holding in *Almendarez-Torres*, which "permits a judge to find the fact of a prior conviction by a mere preponderance of the evidence, even if this fact raises the statutory maximum or minimum penalty for the current offense[,] ... remains good law"). Indeed, if Petitioner, through counsel, had been able to challenge successfully the fact of his prior convictions, which triggered the sentencing enhancement, he could have avoided the twenty year mandatory minimum sentence that was eventually imposed.

However, even if the Court were to find that counsel's performance were deficient for failing to file a written response or object to the Court's failure to conduct a § 851 colloquy, no prejudice exists. Significantly, Petitioner does not *actually* dispute the validity of the convictions presented in the government's information or the fact that they were *his* convictions. *See* Pet'r's Reply Br. 15; *see also United States v. Ellis*, 326 F.3d 593, 598–99 (4th Cir. 2003) (holding that, even though district court "committed plain error in failing to comply with § 851(b)," the error

14

did not affect the defendant's substantial rights because he "did not contest the existence or validity of the prior convictions"). Accordingly, because Petitioner fails to satisfy the second prong of the *Strickland* test, which he bears the burden to prove, his ninth claimed ground of ineffective counsel must also be denied.

    x.   *Counsel's Alleged Failure to Seek Dismissal of the Indictment Under the "Outrageous Government Conduct" Doctrine*

With respect to Petitioner's tenth and final claimed ground for ineffective assistance of counsel, defense counsel was not objectively unreasonable in failing to raise the outrageous government conduct doctrine under the facts of this case. To justify relief under the doctrine, the Fourth Circuit requires conduct "so outrageous as to shock the conscience of the court," which will only occur in "rare cases." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007) (citations omitted). This reasoning is in line with Supreme Court precedent, which has "greatly limited" the application of the doctrine, particularly in drug conspiracy cases where government agents are involved. *See United States v. Hasan*, 718 F.3d 338, 342–43 (4th Cir. 2013) (citing *Hampton v. United States*, 425 U.S. 484 (1976)). For example, in *Hampton*, the Supreme Court held that the defendant's due process rights had not been violated under the outrageous government conduct doctrine where a government informant sold heroin to the defendant, who then sold it to government agents. 425 U.S. at 489–90.

Notably, the Fourth Circuit has *never* held that a defendant's due process rights were violated by the government's outrageous conduct. Indeed, several courts have determined that the ATF's reverse sting operations involving non-existent drug stash houses, such as occurred here, do not "violate fundamental fairness or shock the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *United States v. Dunlap*, 593 F. App'x 619, 621 (9th Cir. 2014) (quoting *United States v. Williams*, 547 F.3d 1187, 1200 (9th Cir. 2008));

15

*accord United States v. Knapp*, 74 F. Supp. 3d 1338 (D. Nev. 2015); *United States v. Colon*, 71 F. Supp. 3d 269, 275 (D. Conn. 2014) (same); *United States v. Duckett*, No. CRIM. PWG-13-626, 2015 WL 424806, at *6 (D. Md. Jan. 29, 2015) (same).  Given the highly circumscribed application of the doctrine under Supreme Court and Fourth Circuit precedent, defense counsel cannot be said to have been objectively unreasonable in failing to raise it.  For the same reason, the outcome would not have been different even if counsel had raised it, and therefore Petitioner fails to show any prejudice.  Accordingly, Petitioner's tenth and final ground for ineffective assistance of counsel must also be denied.

    xi.    *Strickland Claim as to Appellate Counsel*

For the same reasons provided above, appellate counsel was not ineffective for failing to raise on appeal the ten issues identified by Petitioner.

**III.    Conclusion**

For the foregoing reasons, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 336) will be denied.

An appropriate Order shall issue.

August 19, 2015

Alexandria, Virginia

                                   /s/
                       Liam O'Grady
                       United States District Judge